IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LISA NELSON, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI,[1] | : | No. 20-cv-6104 |
|     Defendant. | : | |

## MEMORANDUM OPINION

**CRAIG M. STRAW**                                                                                                                                    **May 16, 2023**
**U.S. MAGISTRATE JUDGE**

      Plaintiff Lisa Nelson alleges the Administrative Law Judge ("ALJ") erred in denying her Supplemental Social Security Income ("SSI") benefits by improperly weighing the opinion of her primary care physician. Doc. 15, at 1. I agree and remand.[2]

      Nelson alleges she is unable to work due to "constant pain," numbness when she walks, "shortness of breath," and balance issues. R. 200. Following a December 2019 ALJ hearing, the ALJ assessed Nelson's residual functional capacity ("RFC")[3] in a January 2020 opinion, limiting Nelson to medium work that requires sitting for no more than eight hours, standing for up to four hours, walking for up to four hours, and several postural and environmental limitations. Id. at 24. Based on vocational expert ("VE") testimony, the ALJ concluded Nelson could perform her prior relevant work as a nurse assistant with this RFC. Id. at 29.

---

[1] Pursuant to Fed. R. Civ. P. 25(d) and 42 U.S.C. § 405(g), Kijakazi was automatically substituted into cases brought against the Commissioner upon his appointment.

[2] Nelson consented to the jurisdiction of a Magistrate Judge, see Doc. 7 & 24, pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 & E.D. Pa. Local Rule Civ. P. 72.1. I was reassigned the case from Magistrate Judge David R. Strawbridge on April 11, 2023. Doc. 25.

[3] A claimant's RFC reflects "the most [a claimant] can still do [in a work setting] despite [the claimant's] limitations." 20 C.F.R. § 416.945(a).

Nelson argues the ALJ failed to support her RFC with substantial evidence by mischaracterizing the record when she found it "inconsistent" with Dr. Marshall's opinion. Doc. 15, at 5-7. Even assuming the ALJ properly characterized the evidence, her analysis is flawed and merits remand.

Dr. Marshall opined Nelson could lift no more than twenty pounds at a time due to her painful arthritis and he would have limited Nelson to light, not medium, work. R. 678; see also 20 C.F.R. § 416.967(b), (c) (light work involves lifting no more than twenty pounds, medium work no more than fifty). To treat her worsening arthritis, Dr. Marshall had referred Nelson to Dr. Corey Ruth, an orthopedic specialist, in 2017. R. 437. In 2018, Dr. Ruth found evidence of tenderness and pain with movement in Nelson's neck, radiating arm pain, and arm weakness. Id. at 532. Nelson first saw Dr. Ruth in 2011, following a slip and fall accident that injured her neck and shoulder. Id. at 247. Although from 2018 onwards Dr. Ruth focused largely on treating Nelson's knee pain with regular injections, she also continued to note Nelson's ongoing cervical spondylosis with radiculopathy.[4] Id. at 515, 520, 523, 525, 528. As the ALJ acknowledged and analyzed, Dr. Ruth ordered images that documented Nelson's spinal osteoarthritis, and treated her painful knees with injections. Id. at 26-27.

The ALJ found Dr. Marshall's opinion "not persuasive" because it was "not supported by the conservative findings from his own records nor those of any other medical source." R. 27. She noted that his opinion of Nelson's limitations was inconsistent with Nelson's own testimony

---

[4] Cervical spondylosis means "degenerative joint disease affecting the cervical vertebrae, intervertebral disks, and surrounding ligaments and connecting tissues," sometimes with pain or paresthesia. Dorland's Illustrated Medical Dictionary, p. 1725 (33rd ed. 2020). Radiculopathy is a disease of the nerve roots, "such as from inflammation or impingement by a tumor or bone spur." Id. at 1547.

about her daily activities, which included retaining the concentration and attention necessary to watch television and sew, as well as the physical capacity to clean, prepare meals, and do laundry.  Id.  She also found Dr. Marshall's opinion that Nelson could not walk or stand for more than two hours in an eight-hour day inconsistent with Nelson's medical records, which included no evidence of "significant deficits in strength, sensation, or neurovascular function," but rather regularly showed findings of no distress, "clear lungs," no edema, and "normal range of motion." Id. at 27-28.

The inconsistencies the ALJ identified to support rejecting Dr. Marshall's opinion are unrelated to Nelson's lifting ability.  Yet, Dr. Marshall's opinion that Nelson can lift up to twenty pounds is consistent with the other evidence the ALJ evaluated and relied on in her opinion.  R. 26.  When evaluating Nelson's functionality in the context of her treatment with Dr. Ruth, including the tenderness in her cervical spine and limited strength and motion in both knees, the ALJ herself described Dr. Ruth's findings as "adequately accounted for by the limitation to light exertion."  Id. at 26.  If Nelson is limited to light work, however, she can lift only up to twenty pounds, and cannot perform her prior work, which the ALJ categorized as medium.[5]  Id. at 29; 20 C.F.R. § 416.967(c) (medium work involves lifting up to fifty pounds).

This is not harmless error.  See Woodson v. Comm'r Soc. Sec., 661 F. App'x 762, 766 (3d Cir. 2016).  The only evidence the ALJ cited to support her finding that Nelson can lift up to fifty pounds and frequently lift up to twenty-five pounds is the opinion of the examining physician, Dr. Shteinberg.  R. at 28.  The ALJ found Dr. Shteinberg's opinion persuasive

---

[5] The VE testified that nursing assistant work is generally performed at the medium exertional level.  R. 53.  The ALJ found that Nelson had actually performed medium work, even though Nelson testified that the most she ever lifted was "half a bucket of water."  Id. at 29, 53.  In her February 2019 function report, Nelson stated the most she ever lifted as a nursing assistant was eight pounds.  Id. at 195.

because it was "supported by the objective findings from her own examination as well as the nature of claimant's medical history and objective findings." Id.  She found Dr. Shteinberg's opinion "consistent with the normal physical examinations described by the claimant's treating providers, as well as the imaging studies, the claimant's treatment history, and the claimant's daily activity, as discussed above." Id.  The ALJ's reference to evidence "as discussed above," however, consisted of: (1) Nelson's imaging, which showed cervical osteoarthritis, id. at 26; (2) her exam, which showed neck pain with movement, radiating arm pain and weakness, id. at 532; (3) her daily activities, which were limited by an ability to lift no more than a gallon of milk, id. at 51; and (4) her specialist's medical records, which the ALJ conceded were "adequately accounted for by the limitation to light exertion." Id. at 26.

      The ALJ's conclusion that the limitations demonstrated in Dr. Ruth's records can be accommodated by a limitation to light work conflicts with her conclusion that Nelson can nonetheless perform medium work.

      An appropriate Order accompanies this opinion.